IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| DANNY ALLEN § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. G-07-341 | |
| § | | |
| COUNTY OF GALVESTON, ET AL. § | | |
| § | | |
| Defendants § | | |

## OPINION AND ORDER

Before the Court, with the consent of the parties,[1] is the Motion for Summary Judgment filed by Defendants County of Galveston (hereinafter "the County") and Galveston County Sheriff Gean Leonard against Plaintiff Danny Allen (Docket Entry ("Doc.") Nos. 30 & 31). Plaintiff filed a Response and Brief In Response to Defendants' Motion (Doc. Nos. 36 & 37). Having carefully considered the Defendants' motion, Plaintiff's response, the parties' submissions, and the applicable law, the Court, for the reasons set below, concludes Defendants' Motion for Summary Judgment should be granted.

## I. BACKGROUND

### A. Factual Background

On February 3, 2000, Galveston County hired Danny Allen (hereinafter "Allen") as a deputy in the Galveston County Sheriff's Office (hereinafter, "GCSO"). (Doc. No. 31-3 at 66 of 114). Allen worked in the corrections division for approximately two years, was then transferred

---

[1] Docket Entry No. 18.

to the bailiff division (a division which was headed up by his father Donny Allen), and was later transferred back to the corrections division in 2005. During his years of employment with the GCSO, several documented complaints were brought against Allen, which resulted in disciplinary action. They are detailed below.

      1.  <u>Incidents Prior to July 4, 2005</u>

A citizen complaint was brought against Allen by Michael James for conduct that occurred at Club D'Elegence on August 8, 2003. (Doc. No. 31-3 (Internal Affairs Investigation file number 03IA0306) at pp. 67-79 of 114). In the complaint, James charged Allen with excessive force and discourteous conduct in the process of detaining him. An investigation was conducted into James' charges. (Doc. No. 31-3 at p. 67-79 of 114). On February 2, 2004, the GCSO Office of Professional Standards (hereinafter, "Internal Affairs") issued a Findings Report that exonerated Allen of the excessive force charge, but sustained the other counts against him which included violating "Standards of Conduct, Discourtesy," "Prohibited Off-Duty Conduct & Powers of Arrest," "Prohibited Secondary Employment," and "Standards of Conduct, Accountability." Based on the Findings Report, an Administrative Action Report was issued on June 7, 2004, which called for a one day suspension of Allen without pay. (Doc. No. 31-3 at p. 68 of 114). The matter was heard by the Administrative Action Committee which "voted unanimously on a three (3) day suspension without pay in lieu of the recommended one (1) day suspension because of the numerous policy violations. (Doc. No. 31-3 at p. 67 of 114; *see also*, Doc. No. 31, Ex. 1 (Allen deposition) at 42-44; 72:12-25 & 73:1-7)

Less than a year later, Internal Affairs was called in to investigate a departmental complaint brought against Allen for conduct that occurred on March 26, 2005. (Doc. No. 31, Ex. 3 (Internal

Affairs Investigation file number 05IA0403)).[2] The complaint charged Allen with operating a motorcycle, marked with emblems from the GCSO, on IH-45 at speeds in excess of 100 mph before he was stopped by an officer with the Texas City Police Department. During the stop, which was recorded on videotape, Allen was reportedly uncooperative and attempted to leave the scene. Internal Affairs investigated the incident and the charges against Allen, which included: (1) violation of law; (2) interfering with an investigation; (3) [un]approved extra-duty employment; (4) conduct unbecoming an officer; and (5) nepotism. Following an investigation, Internal Affairs submitted a Findings Report on April 8, 2005, that exonerated Allen of the charge of unapproved extra-duty employment because Sheriff Leonard acknowledged that he had given Allen permission to perform motorcycle escorts, but that sustained all the other charges against him. Allen received written notice of the results of the investigation. On April 15, 2005, the GCSO issued an Administrative Action Report recommended a "five (5) day suspension without pay" based on Allen's violation of Employee Policy Manual Section 3.4 A1 (violation of law) and Section 3.4 C4 (interfering with investigation). Allen rejected the administrative action and requested a hearing before the Committee. On April 18, 2005, the Administrative Action Committee determined that "[t]he recommendation [five day suspension] [was] not consistent with the factual situation in this matter" and instead called for "[a] one (1) day suspension without pay"; "prohibition of further motorcycle escorts, effectively immediately, pending 1) promulgation of the Policy and Procedure dealing with motorcycle operations and 2) Deputy Allen obtaining standardized and accepted police motorcycle

---

[2] The records found in Exhibit 3 are divided by deputy, however, the records are fairly voluminous and, unfortunately, not Bates stamped for easy reference.

operations courses at his own expense."[3] (*Id.*)

Following on the heels of that incident, a departmental complaint was brought against Allen for conduct that occurred on May 18, 2005. (Doc. No. 31, Ex. 3 (Internal Affairs Investigation file number 05IA0416)). The complaint charged Allen with violating multiple policies that included: working an unapproved extra job for Traylor Brothers Construction; getting paid by Traylor Brothers Construction while working at the Corrections Bureau; calling in sick in order to work an extra job for Traylor Brothers Construction; using emergency equipment on his privately owned vehicle; and being disrespectful towards supervisory personnel during the administrations investigation. Following an investigation, Internal Affairs submitted findings on July 1, 2005, that exonerated Allen of the charge that he was working in two places at the same time, but that sustained the charges that Allen had violated the following policies: (1) that an officer be accurate, complete and truthful at all times; (2) that an officer cooperate in any internal administrative investigation by the GCSO or any authorized agency; (3) that extra off-duty employment be approved in advance, not to conflict with GCSO duty hours, and the officer adhere to the limits of the hours he worked; (4) that an officer conduct himself with respect and courtesy to foster cooperation amongst members of the GCSO; and (5) that an officer is prohibited from using emergency equipment on personal vehicles. Allen was given written notice of the results of the investigation. On July 6, 2005, based on the Internal Affairs report, the GSCO issued an Administrative Action Report in which it determined that, given the violations, the appropriate

---

[3] The Court notes that Allen stated he was disciplined for not having permission to work at funerals as a motor cycle escort and that he was "set-up" since he had permission. (Doc. No. 37 at 3; Ex C ¶ 11). Allen is mistaken. As clearly expressed in the Findings Report, he was exonerated of this charge because Sheriff Leonard conceded that Allen had his permission and, thus, he was not disciplined on this basis.

action was Allen's termination. Allen rejected the administrative action and requested a hearing before the committee. Allen states he was given permission to work the extra job by his former supervisor, Sergeant Reyes Hernandez, and faults the Internal Affairs investigation for not questioning him about the matter. (Doc. No. 37 at 3-4 & Ex. C ¶ 12). On August 1, 2005, the Administrative Action Committee found that the recommendation was consistent with the fact situation and that, with the exception of the count of getting paid while working two jobs for which it found no misconduct, all counts were sustained. The Administrative Action Committee agreed with the decision to terminate Allen's employment. Allen appealed the Committee's decision. Sheriff Leonard heard Allen's appeal, but found no compelling information or evidence to overrule the findings and recommendations of the disciplinary committee and upheld Allen's termination effective August 1, 2005. (Doc. No. 31-3 at p. 65 of 114).

2. Incidents After July 4, 2005

A departmental complaint was brought against Allen for conduct that occurred at Club D'Elegence on July 4, 2005, involving officers with the Galveston Police Department ("GPD") and from which Allen, following the issuance of a warrant, was later arrested by the GPD on charges of interfering with the duties of a public servant. (Doc. No. 31, Ex. 1 (Allen deposition) at 10-22; Ex. 3 (Internal Affairs Investigation file number 05IA0431)). The complaint charged Allen with the following counts: (1) violation of law in violation of GCSO Employee Policy Manual, Section 3.4 A.1; (2) conduct unbecoming an officer in violation of Section 3.4 B; and (3) secondary employment in violation of Section 17.4 A.3.b. Allen was notified of the departmental complaint and investigation. Following an investigation, on July 18, 2005, Internal Affairs submitted its Findings Report. Due to the pendency of the criminal misdemeanor charge, no finding was made

regarding the violation of law count, however, the Internal Affairs investigator determined that the evidence was sufficient to sustain the other two counts against Allen–namely, that he had violated departmental policies regarding conduct unbecoming an officer and the rules prohibiting secondary employment. Allen was given written notice of the results of the investigation.[4] On July 27, 2005, based on the Internal Affairs report, the GCSO issued an Administrative Action Report in which it was determined that termination was the appropriate action for violation of departmental policies. Allen rejected the administrative action and requested a hearing before the committee. On August 1, 2005, the Administrative Action Committee, found that the recommendation was consistent with the fact situation and affirmed Allen's termination. Allen appealed the Committee's decision to Sheriff Leonard, but the Sheriff found no compelling information or evidence to overrule the findings and recommendations of the disciplinary committee and upheld Allen's termination which was effective August 1, 2005. (Doc. No. 31-3 at p. 65 of 114).

3. <u>Other Incident Not Addressed</u>

A citizen complaint was brought by Brent Garrett, Sr. against Allen for conduct that occurred on May 30, 2005. Garrett claimed that Allen assaulted him when he was a patron at Club D'Elegence. (Doc. No. 31, Ex. 3 (Internal Affairs Investigation file number 05IA0421)). Internal Affairs commenced an investigation into whether Allen violated the law and was in violation of GCSO policy regarding secondary employment and Internal Affairs issued a Findings Report on August 15, 2005, which stated that the "investigation could not be thoroughly or properly

---

[4] On July 19, 2005, Allen was notified that the Internal Affairs investigation resulted in findings that both the violation of law and conduct unbecoming an officer had been sustained. Because this was erroneous, another notice was sent to Allen that informed him of the clerical error and provided him with an amended notice which correctly stated that the investigation concerning the count for the violation of law (*i.e.*, the criminal misdemeanor charge) resulted in no findings due to an "incomplete investigation."

investigated" and, because Allen's employment with the GCSO had been terminated, it was concluded that there was "no reason to pursue the alleged violations against him." Allen was notified of the Findings Report.

### B. Procedural Background & Issues Raised

On May 17, 2006, Allen filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that he was terminated based on race. (Doc. No. 31, Ex. 5). On June 2, 2007, Allen filed suit against Galveston County and Sheriff Gean Leonard. (Doc. No. 1). On June 3, 2007, Allen amended his complaint. (Doc. No. 2). Allen seeks compensatory, nominal and punitive damages, attorney fees and costs under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) for race discrimination in employment. On July 16, 2008, Defendants moved for summary judgment of Allen's claims against them. (Doc. Nos. 30 & 31). The Defendants maintain that the suit against Sheriff Leonard, who was sued in his official capacity only, must be dismissed since the County is already a party. Defendants also maintain that, because Allen's EEOC charge was late, his suit is time barred; and, even assuming it is not barred, Allen fails to sufficiently prove his case of race discrimination. Allen filed a response in opposition to Defendants motion for summary judgment. (Doc. Nos. 36 & 37). Allen responds that his charge to the EEOC was timely and further argues that genuine issues of material fact preclude summary judgment on his Title VII claim. Defendants did not file a reply. Defendants' motion for summary judgment is ripe for adjudication.

### II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

7

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992). "An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).

Under Rule 56(c), the moving party bears the initial burden of informing the court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such an absence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *see also, Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999). Where the moving party meets its initial burden under Rule 56(c), the burden then shifts to the nonmovant to show a genuine issue of material fact exists that precludes summary judgment. "[T]he nonmoving party must come forward 'with specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson*, 477 U.S. at 242; *see also*, *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) ("To avoid summary judgment, the nonmoving party must adduce evidence which creates a fact issue.").

At the summary judgment stage, the court views the facts in a light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmovant, but only when "there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007); *see also Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th

Cir. 2000) ("[T]he nonmoving party may not rest on the mere allegations or denial of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial."). "[A] nonmovant cannot overcome summary judgment with conclusory allegations and unsubstantiated assertions." *Mace v. City of Palestine*, 333 F.3d 621, 624 n. 7 (5th Cir. 2003); *see also Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("only evidence–not argument, not facts in the complaint–will satisfy the burden."). Nor can the nonmovant overcome summary judgment by showing "some metaphysical doubt as to the material facts" in an attempt to create a genuine dispute. *Matsushita*, 475 U.S. at 584-86.

### III. ANALYSIS

#### A. Official Capacity Claims Against Defendant Leonard

Allen sued Defendant Leonard only in his official capacity as the Sheriff of Galveston County, Texas. (Doc. No. 2 at 1, ¶ 3). Defendants seek dismissal of Allen's suit against Defendant Leonard. (Doc. No. 31 at 17). It is well established that a lawsuit against a government official in his official capacity is not a lawsuit against the individual, but is a suit against the official's office and, therefore, is no different than a suit against the governmental unit which employs the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also*, *Perez v. Harris County*, 26 F.3d 1119 (5th Cir. 1985). Because the County of Galveston is already a defendant in this case, any suit against Defendant Leonard in his official capacity is duplicative and, as a matter of law, must be dismissed.

#### B. Timeliness of Termination Claim

Defendants seek dismissal of this action on the ground that Allen's EEOC charge was not filed in a timely manner. (Doc. No. 31 at 17). A Title VII plaintiff must file a charge of

9

discrimination with the EEOC within 300 days after learning of the conduct alleged; otherwise, his claims are prescribed. *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir.1998) (citing 42 U.S.C. § 2000e-5(e)(1)); *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997); *Enguita v. Neoplan USA Corp.*, 390 F.Supp.2d 616, 621 (S.D. Tex. 2005).

The discriminatory event that Allen sues upon is the alleged discrimination in his termination. Initially, there is no dispute that an individual alleging discrimination under Title VII must file a charge of discrimination within 300 days of *learning* of the allegedly adverse employment action. (Doc. No. 37 at 8). *See Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) ("[i]n sum, the only alleged discrimination occurred–and the filing limitations periods therefore commenced–at the time the tenure decision was made and communicated to [the employee]."); *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 (5th Cir.1988) (notice of termination begins time period), *abrogated on other grounds in Kimmel v. Florida Bd. of Regents*, 528 U.S. 62 (2000); *Enguita*, 390 F.Supp.2d at 621 (same). There is no dispute that August 1, 2005, the date when Allen's termination was upheld by the Administrative Action Committee or the Sheriff, is not the operative date for calculating the time period. *Enguita*, 390 F.Supp.2d at 621. Rather, the dispute between the parties centers on the date when Allen was informed of his termination. On this point, Defendants maintain that Allen was notified of his termination on July 6, 2005, whereas, Allen contends that he was not notified of his termination until July 27, 2005. Allen suggests that the earlier date relied upon by Defendants was merely a "typographical error" and that he could not have been terminated on July 6, 2005, because when he was arrested and booked on July 7, 2005, he was still in uniform. Allen's contentions are not fully supported by the evidence. The competent summary judgment evidence before the Court reveals that GCSO gave Allen two separate

termination notices based on the results of two different investigations. As pointed out by Defendants, Allen was first notified that the GCSO decided to terminate his employment on July 6, 2005, as a result of the Findings Report of Internal Affairs investigation file number 05IA0416. There is no dispute that Allen had notice of this action because it contained his signature reflecting that he rejected and was appealing the decision. (Doc. No. 31-3 at p. 84 of 114). Thereafter, on July 27, 2005, Allen received his second notice of termination that was based on the Findings Report of Internal Affairs investigation file number 05IA0431. Again, there is no dispute that Allen had notice of this decision because he rejected and appealed it as well. The evidence further reflects that the Administrative Action Committee heard the two separate matters at the same time and, on August 1, 2005, based upon the Findings Report of each independent investigation and Administrative Action Report, upheld the decisions to terminate Allen.

As stated, the adverse employment action of which Allen complains is his wrongful termination by the GCSO. The Fifth Circuit explained that a termination is the "sort of discrete and salient event that should put an employee on notice that a cause of action has accrued." *Huckabay*, 142 F.3d at 239-40. Allen was notified of the decision to terminate his employment on July 6, 2007, and this "discrete act" started the time period for filing an EEOC claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-113 (2002) (the decision to terminate an employee is a "discrete act" and, for purposes of the time period, it starts on the day that it happened). While Allen subsequently filed his EEOC charge of discrimination on May 17, 2006 (Doc. No. 31, Ex. 5), it was untimely.[5] Allen makes no contention that he did not discover the basis for the alleged

---

[5] By the Court's calculations, Allen had until May 3, 2006 to file his charge with the EEOC.

discrimination until a later date, nor does he allege tolling should apply.[6] Thus, as urged by Defendants, Allen's EEOC charge was untimely and should be dismissed on this basis.

### C. Title VII Claim

Even to the extent that Allen's claim were timely, the Court is of the opinion that summary judgment on his race discrimination claim would still be proper. Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. A plaintiff may prove employment discrimination through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir.), *reh'g denied & reh'g en banc denied*, 75 Fed.Appx.982 (5th Cir. 2003). Since the record in this case contains no direct evidence of race discrimination,[7] a three-step analysis applies. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-511 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981); *McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973); *Portis v. First National Bank of New Albany, MS.*, 34 F.3d 325, 328 (5th Cir.1994). In the first step, the plaintiff must establish a prima facie case of discrimination. *St. Mary's*, 509 U.S. at 506; *Portis*, 34 F.3d at 328 n. 7. If the plaintiff presents a prima facie case, a presumption of discrimination arises. *St. Mary's*, 509 U.S. at 506. At the second step, the defendants can rebut this presumption

---

[6] Although not argued by Allen, the pendency of a grievance regarding the employment decision does not toll the running of the limitation period. *See Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980) ("[W]e already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period. The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made.") (internal citations omitted)).

[7] "Direct evidence is evidence that, if believed, proves intentional discrimination without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). It "includes any statement or written document showing a discriminatory motive on its face." *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001) (quoting *Portis v. First Nat'l Bank of new Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994)).

of discrimination by offering a legitimate, nondiscriminatory reason for the employment decision of which the plaintiff complains. *Id.* at 507; *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). The defendant's burden is satisfied if it produces evidence, which "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Price*, 283 F.3d at 720 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993) [emphasis in original]). "If the defendant articulates a reason that can support a finding that its actions were nondiscriminatory, the mandatory inference of discrimination created by the plaintiff's prima facie case drops out" and the case proceeds to the third step of the analysis. *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11 (1993)). At the third stage, the burden is on the plaintiff to prove that the reasons offered by the defendants are pretexts for race discrimination. *St. Mary's*, 509 U.S. at 507-08. "The plaintiff must then introduce sufficient evidence to create a genuine issue of material fact" that defendants were motivated by discriminatory animus. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Plaintiff meets this burden by showing either (1) that defendants' articulated reason was pretextual (pretext alternative), or (2) that plaintiff's protected characteristic was a motivating factor in the decision (mixed motives alternative). *Id.* Personal belief or speculation, however, is insufficient to create a fact issue as to pretext. *McKey v. Occidental Chemical Corp.*, 956 F.Supp. 1313, 1319 (S.D.Tex. 1997). If plaintiff meets this burden by demonstrating discriminatory animus, "it then falls to the defendant to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus.'" *Rachid*, 376 F.3d at 312.

      1. <u>Prima Facie Case of Race Discrimination</u>

A plaintiff has the initial burden of establishing his prima facie case of race discrimination

by showing: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) other, similarly-situated individuals who are outside the protected class were treated more favorably. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir.2007); *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 941 (5th Cir. 2005). In the present case, it is undisputed that Allen satisfies the first three prongs of the test. He is an African American, he was qualified for the position, and he suffered an adverse employment action when he was terminated from employment. The central issue rests in the fourth prong—whether he was treated differently from others similarly situated.

In order to satisfy the fourth prong, a plaintiff must show that the employer gave preferential treatment to a non-African-American employee under "'nearly identical circumstances'; [sic] that is, 'that the misconduct for which the employee was discharged was nearly identical to that engaged in by … [other] employees.'" *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 514 (5th Cir.2001); *see also*, *Berquist v. Wash. Mut. Bank*, 500 F3d 334, 353 (5th Cir. 2007), *cert. denied*, _U.S._, 128 S.Ct. 1124, 169 L.Ed.2d 950 (2008) ("[i]n disparate treatment cases, the plaintiff-employee must show 'nearly identical' circumstances for employees to be considered similarly situated."); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir.2001) ("the conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer.").

Allen contends that he was treated differently because of his race because he was terminated due to the pending criminal misdemeanor charges against him, whereas white male deputies with pending criminal charges were not terminated (Doc. No. 37 at 9; Doc. No. 31, Ex. 1 (Allen

Deposition) at 10:19-25; 11:1-8), and that prior criminal acts of white deputies were ignored when they were hired or retained. In support of his contentions, Allen points to a number of other deputies (*i.e.*, Chatterton, Khaled, Jackson, Black, Linkey, Creech, Billish, and Tello,[8]) claiming that each of these deputies had criminal charges brought against them, but, unlike him, were allowed to keep their jobs pending resolution of the criminal charges against them. Despite his urging to the contrary, the deputies to whom Allen points are not similarly situated. First, as urged by Defendants, Allen's contentions are completely misplaced because he was not terminated due the pending criminal charges against him. Instead, as the evidence clearly reflects, after progressive discipline, the decision to terminate on July 6, 2005, was based on his conduct arising out of the May 18, 2005, incident (Doc. No. 31, Ex. 3 (Internal Affairs Investigation file number 05IA0416)).[9] *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir.2000) (plaintiff must show that the employer treated others differently in "nearly identical circumstances," but failed to make this showing because "the striking differences between the two men's situations [different jobs, different employment problems, different supervisors] more than account for the different treatment they received"). Second, even with regard to the subsequent decision, Allen was not terminated due to the pending criminal misdemeanor charge. (Doc. No. 31, Ex. 3 (Internal Affairs Investigation file number 05IA0431)). In fact, no findings were even made regarding the

---

[8] Notably, former deputy Billish is a white female and former deputy Tello is a hispanic female. (Doc. No. 37 at 6-7).

[9] The stated reasons for his termination included violation of policies requiring officers be accurate, complete and truthful at all times; cooperate in internal administrative investigations by the GCSO or any authorized agency; ensure that extra off-duty employment be approved in advance, not to conflict with GCSO duty hours, and adhere to the limits of the hours worked; conduct themselves with respect and courtesy to foster cooperation amongst members of the GCSO; and not use emergency equipment on personal vehicles.

alleged violation of law charge because, similar to the other white male deputies, the criminal charges were still pending.  (*Id*).

Finally, Allen also points to Tony Munoz, as a comparator.  Allen contends that Munoz, a male, was permitted to work as a maintenance worker even though he had previously served time as a convicted felon, and also claims that Munoz was "written-up" after being accused of sexually harassing a female employee for the Galveston County Health District.  (Doc. No. 37, Ex. F). However, unlike Allen, Munoz was not a deputy for the GCSO office, but a maintenance worker and, thus, clearly not similarly situated.  *Wyvill*, 212 F.3d at 304-05.

Based on the undisputed facts in the record, Allen has failed to meet his burden of demonstrating a prima facie case of discrimination because he has not shown that he was treated differently than others similarly situated on the basis of race or that he was subjected to adverse treatment on the basis of race.

### 2.  Legitimate, Non-Discriminatory Reasons Exist

Even if the Court were to presume that Allen established a prima facie case of discrimination, Galveston County offers legitimate, non-discriminatory reasons that support its decision to terminate Allen.  *See Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) (explaining that it is well established that Title VII does not protect an employee from unfair employment decisions; instead it protects against employment decisions based on discriminatory animus); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (finding that, if based on a good faith belief with no discriminatory animus, an employer can make an incorrect employment decision and the court will not try the validity of the reason); *Waggoner v. City of Garland*, 987 F.2d 1160, 1165-66 (5th Cir. 1993) (explaining that "the inquiry is limited to whether

the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.").

Thus, the burden then shifts back to Allen. The law is clear that a plaintiff must then raise a genuine issue of material fact that defendant's legitimate, nondiscriminatory reason was merely pretextual, and that discrimination was the true reason for the employment action. *See Abarca*, 404 F.3d at 941. Allen fails to shoulder his burden because he offers no evidence that race played any role at all, much less a motivating one, in the decision to terminate his employment. Further, while submitting a response to Defendants' Motion for Summary Judgment, Allen appears to completely ignore the evidence that he was terminated based on his conduct arising out of the incident that occurred on May 18, 2005. Even considering his conduct arising out of incident that occurred on July 4, 2005, Allen does not dispute that no finding was made regarding the then pending criminal misdemeanor charge against him, nor does he dispute that the disciplinary action was not based on the pending criminal charge, but was instead based on his violations of the other GCSO's policies. Allen's only support for his race discrimination complaint is his subjective, self-serving claim that he believes he was the subject of race-based discrimination. However, speculation or conclusory beliefs are insufficient to allow Allen's racial discrimination claim to survive summary judgment. *Waggoner*, 987 F.2d at 1166; *McKey*, 956 F.Supp. at 1313; *see also*, *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (speculation or belief are insufficient to create a fact issue as to pretext nor can pretext be established by mere conclusory statements of a plaintiff who feels he has been discriminated against). Thus, this Court can find no fact issues regarding the issue of pretext which would preclude granting summary judgment for Defendants.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. Nos. 30 & 31) is **GRANTED** and this action against Defendants, the County of Galveston and Gean Leonard is **DISMISSED**, with prejudice, in its entirety.

**DONE** at Galveston, Texas, this _____30th_____ day of March, 2009.

_____
John R. Froeschner
United States Magistrate Judge